UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THEODORE R. WILLIAMS,

             Petitioner,

v.                                        CASE NO. 03-CV-70761-DT
                                          HONORABLE ARTHUR J. TARNOW
RAYMOND BOOKER,

             Respondent.
_____/

## OPINION AND ORDER DENYING PETITION
## FOR WRIT OF HABEAS CORPUS

Pending before the Court is petitioner Theodore R. Williams' *pro se* application

for the writ of habeas corpus under 28 U.S.C. § 2254.  The habeas petition attacks

Petitioner's 1999 state court convictions for assault with intent to commit great bodily

harm less than murder and possession of a firearm during the commission of a felony

(felony firearm).  The Court has concluded for reasons given below that the petition must

be denied.

### I.  Background

Petitioner was charged with assault with intent to commit murder and felony

firearm.  The charge arose from allegations that Petitioner shot his friend Kenneth Lackey

three times while Lackey was seated in his van on a street in Detroit, Michigan.  The

shooting was the culmination of a dispute over approximately $30.00 that Petitioner

*Williams v. Booker*, Case No. 03-70761

supposedly owed Lackey for car repairs.

Petitioner testified in his own defense at trial in Wayne County, Michigan. He did not deny shooting Lackey. He maintained that he acted in lawful self defense.

On August 30, 1999, the circuit court jury found Petitioner guilty of assault with intent to commit great bodily harm less than murder, MICH. COMP. LAWS § 750.84, and felony firearm, MICH. COMP. LAWS § 750.227b. On September 22, 1999, the trial court sentenced Petitioner as a fourth felony offender to two years in prison for the felony firearm conviction and to a consecutive term of ten to twenty years in prison for the assault conviction.

Petitioner appealed his convictions to the Michigan Court of Appeals. He alleged through counsel that his trial attorney was ineffective for failing to move to suppress his criminal record. In a *pro se* supplemental brief, Petitioner alleged that the prosecutor committed misconduct and that the cumulative effect of defense counsel's errors could not have been the result of reasonable professional judgment. The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished *per curiam* opinion. *See People v. Williams,* No. 223006 (Mich. Ct. App. July 13, 2001). Petitioner raised the same issues in the Michigan Supreme Court, which denied leave to appeal because it was not persuaded that the questions presented should be reviewed. *See People v. Williams,*

2

*Williams v. Booker*, Case No. 03-70761

466 Mich. 864; 644 N.W.2d 763 (2002) (table).[1]

Petitioner initiated this action in February of 2003. Accompanying the habeas petition was Petitioner's motion to dismiss the petition without prejudice so that he could exhaust state remedies for some of his claims. The Court denied the motion, but stayed this action while Petitioner pursued state remedies for his unexhausted claims. *See* Doc. #5, Mar. 20, 2003.

Petitioner then filed a motion for relief from judgment. The trial court denied the motion in a form order that did not provide any reasons for the decision. Petitioner alleged in an appeal from the trial court's decision that (1) the trial court improperly dismissed his motion for relief from judgment, (2) trial counsel was ineffective and "cause" for his failure to preserve issues for appellate review, (3) appellate counsel was ineffective for not asserting that trial counsel was ineffective, (4) the trial court gave an erroneous jury instruction on the issue of Petitioner's defense, (5) the prosecutor's misconduct deprived him of a fair trial, and (6) trial counsel was ineffective for failing to object to the prosecutor's misconduct and the trial court's erroneous jury instruction. The Michigan Court of Appeals denied leave to appeal for failure to establish entitlement to relief under Michigan Court Rule 6.508(D). *See People v. Williams*, No. 247971 (Mich. Ct. App. Sept. 4, 2003). On April 30, 2004, the Michigan Supreme Court denied leave to

---

[1] Justices Michael F. Cavanagh and Marilyn Kelly voted to remand the case for an evidentiary hearing on Petitioner's claim of ineffective assistance of counsel.

3

*Williams v. Booker*, Case No. 03-70761

appeal for the same reason.  *See People v. Williams*, 470 Mich. 854; 679 N.W.2d 701

(2004) (table).

On May 25, 2004, Petitioner filed an amended habeas petition, which alleges that

(1) trial counsel was ineffective for failing to move to suppress Petitioner's criminal

record, (2) the prosecutor's misconduct deprived Petitioner of a fair trial, (3) trial counsel

made errors that could not have been the result of reasonable professional judgment, and

(4) the trial court failed to properly instruct the jury.  Also pending before the Court are

Petitioner's motion for appointment of counsel and his *ex parte* motion to amend the

habeas petition.  Respondent contends that the state court's decision on Petitioner's

ineffective-assistance-of-counsel claim was not an unreasonable application of *Strickland*

*v. Washington*, 466 U.S. 668 (1984), and that Petitioner's remaining claims are

procedurally defaulted.

## II.  Standard of Review

Section 2254(d) of Title 28, United States Code, imposes the following standard of

review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim –
>
> (1)     resulted in a decision that was contrary to, or involved an
>         unreasonable application of, clearly established Federal law,
>         as determined by the Supreme Court of the United States; or

*Williams v. Booker*, Case No. 03-70761

(2)     resulted in a decision that was based on an unreasonable
        determination of the facts in light of the evidence presented in
        the State court proceedings.

28 U.S.C. § 2254(d).  Additionally, this Court must presume the correctness of state court

factual determinations.  28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the

state court arrives at a conclusion opposite to that reached by the Supreme Court on a

question of law or if the state court decides a case differently than the Supreme Court has

on a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405-06

(2000).  An "unreasonable application occurs" when "a state-court decision unreasonably

applies the law of [the Supreme Court] to the facts of a prisoner's case."  *Id.* at 409.  A

federal habeas court may not "issue the writ simply because that court concludes in its

independent judgment that the relevant state-court decision applied clearly established

federal law erroneously or incorrectly.  Rather, that application must also be

unreasonable."  *Id.* at 411.

### III.  Claims Raised on Direct Appeal

### A.  Trial Counsel - Failure to Move to Suppress Petitioner's Criminal Record

The first habeas claim alleges that Petitioner's trial attorney was ineffective for

failing to move to suppress Petitioner's criminal record, which included eight felony

convictions.  The Michigan Court of Appeals adjudicated this claim using the *Strickland*

standard and concluded that defense counsel was not ineffective, because any error would

*Williams v. Booker*, Case No. 03-70761

not have altered the outcome of the proceedings.

To prevail on a claim of ineffective assistance of counsel, Petitioner must demonstrate that the state court's conclusion was contrary to, or an unreasonable application of, *Strickland. See Williams v. Taylor*, 529 U.S. at 391 (explaining that *Strickland* qualifies as "clearly established Federal law" under 28 U.S.C. § 2254(d)(1) for purposes of ineffective-assistance-of-counsel claims). The Supreme Court held in *Strickland,* that an attorney is constitutionally ineffective if the attorney's performance was deficient and the deficient performance prejudiced the defense. *See id.* at 687. The first prong of this test requires showing that defense "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The second prong requires demonstrating "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Petitioner testified that he was addicted to drugs at one time. The prosecutor asked Petitioner on cross-examination whether, during the time that he was addicted to drugs, he was convicted of approximately eight crimes involving theft and dishonesty. Petitioner admitted that this was true, and defense counsel did not object. (Tr. Aug. 30, 1999, at 76.)

The Michigan Court of Appeals subsequently determined that eight of Petitioner's eleven prior convictions were inadmissible under Michigan Rule of Evidence 609(c),

6

*Williams v. Booker*, Case No. 03-70761

because they were "stale" (more than ten years old). The court of appeals stated that two of the remaining three convictions, those for receiving or concealing stolen property over $100, were admissible under Michigan Rule of Evidence 609(a)(1) (crimes containing an element of dishonesty or false statement). The court of appeals concluded that any error in admitting evidence of Petitioner's prior convictions was harmless under the circumstances and that correction of the error would not have altered the outcome of the proceedings.

This Court agrees that defense counsel's failure to object to the admission of Petitioner's prior convictions did not prejudice the defense. The prosecutor's question was raised in the context of Petitioner's addiction to drugs. The jury could have concluded that Petitioner's addiction had led him to lie and steal to support his habit. The crimes were nonviolent offenses and dissimilar to the charged offenses. Moreover, the prosecutor did not ask any additional questions about Petitioner's past convictions. Instead, she immediately pursued another line of questioning. No further reference was made about Petitioner's prior record.

In addition, the evidence against Petitioner was overwhelming. He admitted that he was carrying a gun on the day in question because he thought that he might run into the victim. And although he claimed that the victim had something in his hand immediately before the shooting, he conceded that he did not know for sure what the victim was holding and that he shot the victim three times. He then left town because he

7

*Williams v. Booker*, Case No. 03-70761

was afraid and did not know how to explain the shooting.

The jury likely convicted Petitioner on the strength of the admissible evidence, as opposed to, his criminal history.  The Court therefore concludes that, even if defense counsel's performance was deficient, the deficient performance did not prejudice the defense.  The state court's conclusion was not contrary to, or an unreasonable application of, *Strickland*.

Petitioner maintains that the Michigan Court of Appeals erred by applying a harmless-error analysis to his claim when it should have used a "plain error" standard of review.  Petitioner also alleges that the court of appeals erred by concluding that his receiving and concealing convictions were theft convictions.  These alleged errors of state law are not grounds for habeas relief.  *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

### B.  The Prosecutor

The second habeas claim alleges that the prosecutor's misconduct deprived Petitioner of a fair trial.  The two sub-claims that were raised on direct appeal allege that the prosecutor suppressed exculpatory evidence and deliberately injected Petitioner's prior convictions into evidence.  Petitioner raised these issues in his *pro se* supplemental brief, which the Michigan Court of Appeals accepted for filing, but did not acknowledge or address in its opinion.  Because the court of appeals did not address the issues, this Court must review the claims *de novo*.  *Howard v. Bouchard*, 405 F.3d 459, 467 (6th Cir. 2005).

8

*Williams v. Booker*, Case No. 03-70761

### 1. Withholding Evidence

Petitioner alleges that the prosecutor suppressed fourteen photographs taken by a evidence technician. One of the photographs depicted the floorboard on the driver's side of the victim's van. The record includes a photocopy of that photograph.

The Supreme Court held in *Brady v. Maryland*, 373 U.S. 83, 87 (1963), that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Petitioner allegedly acquired the evidence technician's photographs on the first day of trial, and *Brady* applies only to a complete failure to disclose, not tardy disclosure during trial, unless the defendant has been prejudiced by the delay. *Norris v. Schotten*, 146 F.3d 314, 334 (6th Cir. 1998) (quoting *United States v. Word*, 806 F.2d 658, 665 (6th Cir. 1986)).

Petitioner alleges that he was prejudiced by the delayed disclosure, because he was unable to thoroughly review the photographs before trial. He asserts that one of the photographs depicts a small gun on the floorboard of the driver's side of the victim's van. This evidence, he claims, would have supported his defense that he acted in self defense.

It is questionable whether the photograph depicts a gun. The object that Petitioner claims is a small handgun could be some other small object, such as an electronic device. The evidence technician, in fact, denied finding any evidence, except blood, in the victim's van. (Tr. Aug. 30, 1999, at 17-19.) The Court concludes on the bases of *Norris*,

9

*Williams v. Booker*, Case No. 03-70761

the photocopy, and the technician's testimony that the prosecutor did not suppress

material evidence and, therefore, no *Brady* violation occurred.

## 2.  Injecting Prior Convictions

Petitioner alleges that the prosecutor injected his criminal history in evidence for

prejudicial effect.  Although the prosecutor no doubt was attempting to undermine

Petitioner's credibility, a prosecutor's intention is only one of four factors used to

determine whether the prosecutor's conduct was "so flagrant as to render the entire trial

fundamentally unfair." *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003), *cert. denied*

*sub nom Bowling v. Haeberlin*, __ U.S. __, 125 S. Ct. 281 (2004).  The other three factors

for determining whether an impropriety was flagrant are:  (1) the likelihood that the

remark misled the jury or prejudiced the accused, (2) whether the conduct was isolated or

extensive, and (3) whether the other evidence against the defendant was substantial.  *Id.* at

512-13.


The reference to Petitioner's prior convictions was an isolated one.  It is unlikely

that the prosecutor's question misled the jury or prejudiced Petitioner, because no

emphasis was placed on Petitioner's prior convictions, no other reference was made to

them, and the other evidence against Petitioner was substantial.

Petitioner has failed to demonstrate that the prosecutor's question about

Petitioner's prior convictions infected the trial with such unfairness as to make the

*Williams v. Booker*, Case No. 03-70761

resulting conviction a denial of due process. *Donnelly v. DeChristoforo*, 416 U.S. 637, 639, 643 (1974). Petitioner also has failed to show that the prosecutor withheld material evidence. Therefore, Petitioner is not entitled to the writ of habeas corpus on the basis of his prosecutorial-misconduct claim.

### C.  Trial Counsel - Failure to Acquire Exculpatory Evidence and to Object to Prosecutorial Misconduct and Improper Jury Instruction

### 1. Photographs

Petitioner alleges that his trial attorney failed to make a serious effort to acquire exculpatory photographs depicting a small gun on the driver's side of the victim's van. The Court determined above that the item shown on the floorboard of the van could have been something other than a gun.

Furthermore, the record indicates that, about five months before trial, defense counsel requested the photographs. (Tr. Mar. 26, 1999, at 3-4.) Petitioner alleges that he acquired the photographs on the first day of trial, which was August 26, 1999. On the second day of trial, August 30, 1999, defense counsel stated that he had reviewed the photographs and that he wanted to have the evidence technician verify some things. The evidence technician then testified that he found no evidence except blood in the victim's van. No mention was made of a gun. The Court concludes that defense counsel made an adequate attempt to obtain the photographs and that any deficiency in pursuing the matter did not prejudice the defense.

11

*Williams v. Booker*, Case No. 03-70761

### 2. Failure to Object to the Prosecutor's Comment

Petitioner alleges that his trial attorney failed to object to prosecutorial misconduct. He has not described the misconduct that he contends his attorney should have attacked, but on state collateral review, he complained of the prosecutor's reference to thirty pieces of silver.  (Tr. Aug. 30, 1999, at 100.)  Petitioner asserts that the reference was an appeal to the jurors' religious beliefs and that his attorney should have objected to the remark.

The prosecutor may have been drawing an analogy to the biblical account of Judas Iscariot delivering Christ to the authorities for thirty pieces of silver.  *See* Matt. 26:14-15. Even if the comment were an improper appeal to the jurors' religious beliefs, it was a fleeting remark in a two-day trial, and an objection to the remark would have drawn more attention to it.  The Court believes that the remark was harmless in light of the substantial evidence against Petitioner and, therefore, defense counsel's failure to object did not amount to ineffective assistance.

### 3. Failure to Object to the Jury Instruction

Petitioner alleges that his attorney should have objected to an improper jury instruction, but he has not identified the objectionable jury instruction.  He alleged in state court that his attorney should have requested a jury instruction on flight.  This claim is meritless, because the trial court did instruct on flight, saying:

> There has been some evidence that the Defendant ran away and hid after the alleged crime.  This evidence does not prove guilt.  A person may run or hide for innocent reasons, such as being in the state of fear.  However, a

12

*Williams v. Booker*, Case No. 03-70761

person may also run and hide because of a consciousness of guilt.  You
must decide whether the evidence is true, and if true, whether it shows that
the Defendant had a guilty state of mind.

(Tr. Aug. 30, 1999, at 132.)  Because the jury was instructed on flight, Petitioner's claim

that defense counsel should have requested such an instruction is frivolous and does not

entitle Petitioner to relief.

## IV.  Claims Raised on State Collateral Review

Petitioner raised his remaining claims, with one exception, on appeal from the trial

court's denial of his motion for relief from judgment.[2]  Respondent asserts that these

claims are procedurally defaulted.

### A.  Procedural Default

A procedural default in the habeas context is "a critical failure to comply with state

procedural law. . . ."  *Trest v. Cain*, 522 U.S. 87, 89 (1997).  The doctrine of procedural

default provides that,

[i]n all cases in which a state prisoner has defaulted his federal claims in
state court pursuant to an independent and adequate state procedural rule,
federal habeas review of the claims is barred unless the prisoner can

---

[2]  The Court has found no mention in the state court materials of Petitioner's claim
that defense counsel failed to protect him from the prosecutor's untimely notice to seek an
enhanced sentence.  The Court will treat the unexhausted claim as procedurally defaulted,
because Petitioner no longer has an available remedy to exhaust.  He has already filed one
motion for relief from judgment, and the Michigan Court Rules prohibit filing a second or
successive motion for relief from judgment unless the motion is based on a retroactive
change in the law or on new evidence.  *See* Mich. Ct. R. 6.502(G).  These exceptions do
not apply here.

13

*Williams v. Booker*, Case No. 03-70761

demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

In *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986), the Sixth Circuit set forth a four-part test for determining whether a prisoner's constitutional claim is procedurally defaulted and barred from habeas review.  Pursuant to *Maupin*, courts must ascertain whether:  (1) there is a state procedural rule applicable to the petitioner's claim and whether the petitioner failed to comply with that rule; (2) the state courts actually enforced the state procedural rule; (3) the procedural rule is an adequate and independent state ground on which the state can rely to foreclose federal review of a federal constitutional claim; and (4) the petitioner has shown cause for not complying with the procedural rule and actual prejudice from the alleged constitutional error.  *Id*. at 138.


The procedural rule in question here is Michigan Court Rule 6.508(D)(3), which prohibits granting relief from judgment if a motion

(3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence . . . unless the defendant demonstrates

(a) good cause for failure to raise such grounds on appeal or in the prior motion, and

(b) actual prejudice from the alleged irregularities that support the claim for relief.

14

*Williams v. Booker*, Case No. 03-70761

Mich. Ct. R. 6.508(D)(3) (effective Oct. 1, 1989).

Petitioner did not raise his remaining claims about the prosecutor, trial counsel, and the jury instructions on direct appeal. Although the trial court did not state that the claims were barred by a procedural error, the trial court also did not adjudicate the claims on their merits. The court provided no reason at all for denying Petitioner's motion for relief from judgment. The Michigan Court of Appeals and the Michigan Supreme Court subsequently denied leave to appeal for failure to establish entitlement to relief under Rule 6.508(D). These brief orders provided sufficient explanations for this Court to conclude that the orders were based on a procedural bar. *Burroughs v. Makowski*, 282 F.3d 410, 413-14 (6th Cir. 2002); *Simpson v. Jones*, 238 F.3d 399, 407-08 (6th Cir. 2000); *cf. Abela v. Martin*, 380 F.3d 915, 923-24 (6th Cir. 2004) (stating that the *Simpson* and *Burroughs* rationale was inapplicable, because the last reasoned state court judgment was a determination on the merits and because the Michigan Supreme Court referred only to Michigan Court Rule 6.508(D), as opposed to Rule 6.508(D)(3), and did not clearly and expressly invoke a procedural bar).

The procedural bar set forth in Rule 6.508(D) is an adequate and independent ground on which the State's appellate courts may rely in foreclosing review of federal claims. *Howard v. Bouchard,* 259 F.3d at 477; *Munson v. Kapture*, 384 F.3d 310, 314-15 (6th Cir. 2004), *cert. denied sub nom Munson v. Metrish*, __ U.S. __, 125 S. Ct. 1937 (2005). The rule was firmly established and regularly followed before Petitioner's trial,

15

*Williams v. Booker*, Case No. 03-70761

and the state appellate courts actually relied on the rule to deny relief.  Therefore, all four

elements of procedural default have been satisfied.  Petitioner  must show "cause" for his

procedural default and resulting prejudice or a miscarriage of justice in order for this

Court to consider his procedurally defaulted claims.  *Coleman,* 501 U.S. at 750.

Petitioner alleges that his appellate attorney was "cause" for his failure to raise

issues on appeal.  Attorney error constitutes cause to excuse a procedural default only if

counsel's performance was constitutionally deficient.  *Deitz v. Money*, 391 F.3d 804, 809

(6th Cir. 2004).  An appellate attorney need not raise every nonfrivolous argument

requested by the client, *Evitts v. Lucey*, 469 U.S. 387, 394 (1985); *Jones v. Barnes*, 463

U.S. 745, 751 (1983), and "it is difficult to demonstrate that an appellate attorney has

violated the performance prong where the attorney presents one argument on appeal

rather than another."  *Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003) (citing *Smith v.*

*Robbins*, 528 U.S. 259, 288 (2000)).

In this Circuit, the effectiveness of appellate counsel is measured by the well-

established *Strickland* standard and with the assistance of the eleven questions set forth in

*Mapes v. Coyle*, 171 F.3d 408 (6th Cir. 1999).  *Whiting v. Burt*, 395 F.3d 602, 619 (6th

Cir. 2005).  The eleven questions are:

(1)   Were the omitted issues "significant and obvious"?
(2)   Was there arguably contrary authority on the omitted issues?
(3)   Were the omitted issues clearly stronger than those presented?
(4)   Were the omitted issues objected to at trial?
(5)   Were the trial court's rulings subject to deference on appeal?

16

*Williams v. Booker*, Case No. 03-70761

    (6)  Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?

    (7)  What was appellate counsel's level of experience and expertise?

    (8)  Did the petitioner and appellate counsel meet and go over possible issues?

    (9)  Is there evidence that counsel reviewed all the facts?

    (10) Were the omitted issues dealt with in other assignments of error?

    (11) Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes,* 171 F.3d at 427-28.

"Counsel's failure to raise an issue on appeal is ineffective assistance only if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *Howard v. Bouchard*, 405 F.3d at 485 (citing *Greer v. Mitchell*, 264 F.3d 663 (6th Cir. 2001)).  However, the omission of a "dead-bang winner" can be deficient performance and prejudicial even though counsel may have presented strong but unsuccessful claims on appeal.  *United States v. Cook*, 45 F.3d 388, 395 (10th Cir. 1995) (citing *Page v. United States*, 884 F.2d 300, 302 (7th Cir. 1989)).[3]  With these principles in mind, the Court will proceed to review Petitioner's underlying claims to determine whether appellate counsel's failure to raise the claims on direct appeal amounted to

---

[3]  A "dead-bang winner"

is an issue which was obvious from the trial record, *see e.g., Matire v. Wainwright*, 811 F.2d 1430, 1438 (11th Cir. 1987) (counsel's failure to raise issue which 'was obvious on the record, and must have leaped out upon even a casual reading of [the] transcript' was deficient performance), *and* one which would have resulted in a reversal on appeal.

*Id.* (emphasis in original).

17

*Williams v. Booker*, Case No. 03-70761

ineffective assistance.

## B. The Prosecutor

### 1. Facts in Evidence

Petitioner alleges that the prosecutor stated facts not in evidence when she stated during closing arguments that the victim had nothing in his hands.  (Tr. Aug. 30, 1999, at 101-03.)  Petitioner contends that a photograph taken by the evidence technician indicates there was a small gun on the driver's side of the victim's van.

Petitioner testified that Kenneth Lackey had something, possibly a wrench, in his hand before he shot Lackey.  (*Id*. at 83.)  Lackey, however, testified that he did not possess a weapon and that his tools were in the back of the van, not in his hand, in the front seat, or within reach.  (Tr. Aug. 26, 1999, 86, 90, 109-10.)  Ulysses Moore testified that, when he approached Lackey shortly after the shooting, he did not see anything in his hands.  (*Id*. at 136-37.)  And, as previously explained, the evidence technician found nothing noteworthy in the van except blood.  (Tr. Aug. 30, at 17-19.)  Therefore, the prosecutor's comment that the victim did not have anything in his hands was a fair comment on the evidence.  Prosecutors may argue reasonable inferences from the record. *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000).

### 2. Personal Beliefs

Petitioner alleges that the prosecutor injected her personal beliefs into the record by referring to Petitioner as liar, insisting that Petitioner was waiting to shoot Lackey, and

18

*Williams v. Booker*, Case No. 03-70761

claiming that, because Petitioner and Lackey were old friends, Petitioner could not possibly have believed that Lackey meant to harm him.

There was ample evidence that Petitioner and Kenneth Lackey had been friends for years. Furthermore, the prosecutor never called Petitioner a liar. She did describe Petitioner's version of the events as "lame," and she did attack Petitioner's testimony concerning his physical condition and intent to scare Lackey. (Tr. Aug. 30, at 100, 105-06.) She also said that Petitioner had been waiting for an opportunity to shoot Lackey. (Tr. Aug. 30, 1999, at 105.) These were reasonable inferences from the testimony. Petitioner and Lackey had been arguing for weeks about $30.00 that Petitioner supposedly owed Lackey. In addition, Petitioner admitted to taking a gun to a location where he thought he might run into Lackey. The fact that Petitioner shot Lackey three times suggested that he intended to do more than scare Lackey.

The prosecutor was entitled to argue reasonable inferences, *Byrd*, 209 F.3d at 535, and, "[w]here there is conflicting testimony, it [also] may be reasonable to infer, and accordingly to argue, that one of the two sides is lying." *United States v. Collins*, 78 F.3d 1021, 1040 (6th Cir. 1996); *see also United States v. Francis*, 170 F.3d 546, 552 (6th Cir. 1999) (concluding that, because the defendant took the stand, it was not improper for the prosecutor to question his credibility by calling him a liar and con man in her closing argument, provided that the prosecutor's attack was based on evidence before the jury). The Court concludes that the prosecutor's remarks were not improper.

19

*Williams v. Booker*, Case No. 03-70761

### 3.  Appeal to Religious Beliefs

Next, Petitioner alleges that the prosecutor appealed to the jurors' religious beliefs when she mentioned thirty pieces of silver.  The actual comment, in context, reads:

> Well, ladies and gentlemen, I think what it has boiled down to is the fact no matter who's going to pay who the money and it's all about pride now.  Oh, yeah, you're going to call me a B.  Oh, you're going to call me a Bitch. Okay, fine.  You're going to call me that, then I'm going to show you.  It's no longer about $30 or 30 pieces of silver.  It's about three pieces of lead. The three pieces of lead that ended up in Mr. Lackey's elbow and the piece of lead that's still is (sic) in his kidney or near his kidney.  Because on that day, July he 25th of 1998, there was only one person out there with a weapon ladies and gentlemen.

(Tr. Aug. 30, 1999, at 100.)

To the extent that the prosecutor was attempting to draw an analogy to Judas Iscariot's betrayal of Christ for thirty pieces of silver, the comment was an irrelevant and inflammatory appeal to the jurors' religious beliefs.  *Cf. United States v. Giry*, 818 F.2d 120, 133 (1st Cir. 1987) (concluding that the prosecutor's reference to Peter's denial of Christ constituted an irrelevant and inflammatory appeal to the jurors' private, religious beliefs).  However, the prosecutor did not suggest that Petitioner be adjudicated under biblical standards, and she did not ask the jury to decide the case on a religious or emotional basis.  *Cf. United States v. Bailey*, 123 F.3d 1381, 1401 (11th Cir. 1997).  The reference to thirty pieces of silver was a fleeting remark, which was not so inflammatory as to require reversal.  The remark was harmless error, if anything, given the strength of the evidence against Petitioner.

20

*Williams v. Booker*, Case No. 03-70761

### 4.  Burden-shifting Conduct

Petitioner alleges that the prosecutor shifted the burden of proof by stating that the act of shooting Kenneth Lackey three times was an indication of his intent to kill. The Michigan Supreme Court has said that the intent to kill or to do great bodily harm may be inferred from the use of a dangerous weapon.  *See People v. Carines*, 460 Mich. 750, 759; 597 N.W.2d 130, 136 (1999).  Moreover, the prosecutor refrained from saying that the jurors must presume an intent to kill from the use of a gun.  The prosecutor's argument was proper and did not shift the burden of proof to Petitioner.

### 5.  Untimely Notice

Petitioner's final allegation about the prosecutor is that she failed to file a timely notice to seek enhancement of Petitioner's sentence.  The trial court's journal of docket entries appears to suggest that Petitioner was served a notice to seek enhancement of sentence on the same day as the sentencing.  Even if the notice was untimely under state law, Petitioner's prior convictions were summarized for him at a pretrial conference on March 5, 1999, and his attorney stated at the sentencing that they had an opportunity to go over the pre-sentence report.  They had no additions or corrections to make, with the exception of a minor change in Petitioner's marital status.

Petitioner acknowledged his prior convictions at sentencing, and he made no objection to being sentenced as a habitual offender.  He merely asked for leniency, claiming that he had not intended to harm the victim and that his prior convictions were

21

*Williams v. Booker*, Case No. 03-70761

not violent crimes.  Thus, Petitioner cannot point to any prejudice as a result of the

allegedly tardy notice.

### 6.  Summary of Prosecutorial-Misconduct Claims

The Court concludes for the foregoing reasons that Petitioner's claims about the

prosecutor were not clearly stronger the issues raised on direct appeal.  Therefore,

appellate counsel was not ineffective for failing to raise Petitioner's prosecutorial-

misconduct claims on direct appeal.

### C.  Defense Counsel

### 1.  Presentation of the Defense

Petitioner alleges that his trial attorney failed to properly and aggressively present

his defense and failed to question the jury instruction on specific intent.  The defective

jury instruction on specific intent appears to have been a slip of the tongue, *see infra* Part

IV.D.3, and the contention that defense counsel inadequately presented a defense is belied

by the record.  In his opening statement, defense counsel stated that Kenneth Lackey had

bullied and threatened Petitioner for years and that, at each confrontation, Lackey was the

aggressor.  Counsel asserted that Petitioner held a reasonable belief that his life was in

danger when he shot Lackey.  (Tr. Aug. 26, 1999, at 65-66.)

Defense counsel also thoroughly cross-examined Lackey (*Id.* at 99-123, 127-30),

and he produced a witness who testified that, a few weeks before the shooting, Lackey

had threatened to kill Petitioner.  (Tr. Aug. 30, 1999, at 29-30) (Derrick Williams'

22

testimony.)[4]  Defense counsel produced another witness, who testified that he worked

with Petitioner and that he was unaware of any violent tendencies in Petitioner.  (*Id.* at

40-42) (Sherman Houston's testimony.)  Defense counsel elicited testimony that

Petitioner had feared Lackey would kill him and that he never intended to kill Lackey, but

merely wanted to scare Lackey so that Lackey would leave him alone.  (*Id.* at 62, 71-72.)

During closing arguments, defense counsel argued that Petitioner held an honest and

reasonable belief that his life was in danger and, therefore, he acted in lawful self defense

when shooting Lackey.  (*Id.* at 108-12, 115, 119.)  The Court concludes that defense

counsel's presentation of Petitioner's defense was more than adequate.

### 2.  Failure to Object to Untimely Notice

Petitioner alleges that defense counsel should have objected to the prosecution's

failure to file a timely notice to seek enhancement of the sentence.  The allegedly

untimely notice, however, had no apparent impact on Petitioner.  *See infra* Part IV.B.5.

Therefore, defense counsel's failure to object did not constitute ineffective assistance.

### 3.  Summary of Claims about Defense Counsel

The Court concludes for the reasons given above that defense counsel's

performance was not deficient and that the deficient performance did not prejudice the

defense.  Consequently, appellate counsel was not ineffective for failing to assert

_____

[4] Derrick was no relation to Petitioner.  (*Id.* at 25.)

*Williams v. Booker*, Case No. 03-70761

Petitioner's claims about trial counsel.

### D.  The Jury Instructions

Petitioner alleges that the trial court's jury instructions violated his right to due process of law.

### 1.  Failure to Instruct on Relevant Law

Petitioner asserts that the trial court failed to instruct on the relevant law. Petitioner has not explained how the trial court's instructions on the relevant law were inadequate, but he argued in state court that the trial court did not instruct the jury on the proper use of evidence concerning Petitioner's prior felony convictions.

The record does not indicate that defense counsel requested such an instruction, and defense counsel did not object to the instructions as given.  The lack of an instruction likely benefitted Petitioner, in any event, because only one minor reference was made to Petitioner's criminal record during trial, and a jury instruction about Petitioner's prior convictions would have emphasized them.

### 2.  Self Defense

Petitioner alleges that the jury instruction on self defense was conflicting and confusing.  Although he has not explained the basis for this claim, he argued in state court that the trial court instructed the jurors to consider all the circumstances from Petitioner's point of view and, at the same time, to consider whether in their opinion the amount of

24

*Williams v. Booker*, Case No. 03-70761

force used was necessary.  Petitioner also alleged that a slight alteration in the standard

language about the amount of force used contributed to the general confusion of the jury.

The trial court gave a fairly lengthy instruction on self defense, explaining that a

person has the right to use force to defend himself under certain circumstances and that a

person is not guilty of any crime if he acts in lawful self-defense.  The trial court also

explained that the defendant did not have the burden of proving that he acted in self

defense and that the prosecution carried the burden of proving that the defendant did not

act in self defense.  (Tr. Aug. 30, 1999, at 136-38.)  The instructions as a whole

adequately informed the jury how to evaluate Petitioner's theory of self defense.

### 3.  Shifting the Burden of Proof

Petitioner contends that the trial court shifted the burden of proof when it stated

that Petitioner "must prove he attempted to murder."  This occurred during the trial

court's explanation of "specific intent."  The court stated that, "[f]or the crime of assault

with intent to commit murder, this means that *the Defendant* must prove that he attempted

to murder."  (*Id.* at 135) (emphasis added).  The court should have stated that *the*

*prosecution* must prove that the defendant attempted to murder the victim.

The Court believes that the trial court misspoke, because the court went on to

explain that, for the lesser-included offenses of assault with intent to do great bodily harm

and felonious assault, the prosecution must prove that the defendant intended to do great

bodily harm or intended to injure.  (*Id.*)  The trial court made it clear elsewhere in its

25

*Williams v. Booker*, Case No. 03-70761

charge to the jury that the prosecution carried the burden of proving the elements of the offenses beyond a reasonable doubt and that Petitioner was not required to prove his innocence or do anything.  (*Id.* at 126, 133-35.)  The error was harmless, moreover, because the jury acquitted Petitioner of assault with intent to commit murder.

### 4.  Summary of Claims about the Jury Instructions

Petitioner's claims about the jury instructions would not have resulted in a reversal if they had been raised on direct appeal.  Therefore, appellate counsel was not ineffective for failing to raise the claims.

### E.  The Sentence

Petitioner alleges that the trial court improperly enhanced his sentence without establishing subject-matter jurisdiction.  According to Petitioner, the trial court lacked jurisdiction to sentence him as a habitual offender because the prosecutor failed to file a proper notice of intent to enhance the sentence.

As previously explained, Petitioner appears to have been aware that his prior convictions could lead to an enhanced sentence.  Although the prosecutor's notice of intent to seek an enhanced sentence may have been untimely, Petitioner did not object to the untimeliness of the notice or to his prior record at the sentencing.  Therefore, appellate counsel was not ineffective for failing to challenge Petitioner's sentence as a habitual offender.

Even if this claim were not procedurally defaulted, the Court would have to

*Williams v. Booker*, Case No. 03-70761

conclude that it lacked merit. The determination of whether the trial court was "vested

with jurisdiction under state law is a function of the state courts, not the federal

judiciary." *Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir. 1976).

### F.  Prejudice; Miscarriage of Justice

For all the reasons given above, the Court concludes that Petitioner's procedurally

claims lack substantive merit.  "[A]ppellate counsel cannot be ineffective for a failure to

raise an issue that lacks merit." *Greer*, 264 F.3d at 676.  Therefore, appellate counsel

cannot be deemed "cause" for Petitioner's procedural defaults, and the Court need not

determine if Petitioner was prejudiced by the alleged violations of federal law. *Smith v.

Murray*, 477 U.S. 527, 533 (1986); *Simpson,* 238 F.3d at 409.

A petitioner may overcome his procedural default even in the absence of  "cause

and prejudice" upon a showing of actual innocence. *Lott v. Coyle*, 261 F.3d 594, 620 (6th

Cir. 2001) (citing *Schlup v. Delo*, 513 U.S. 298, 314-15 (1995), and *Herrera v. Collins*,

506 U.S. 390, 417 (1993)).  This narrow exception to the procedural default rule requires

the habeas applicant to demonstrate that the alleged constitutional error probably resulted

in the conviction of one who is actually innocent of the underlying offense. *Dretke v.

Haley*, 541 U.S. 386, 388; *Murray v. Carrier*, 477 U.S. 478, 496 (1986).  "To be credible,

[a claim of actual innocence] requires [the] petitioner to support his allegations of

constitutional error with new reliable evidence--whether it be exculpatory scientific

evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not

27

*Williams v. Booker*, Case No. 03-70761

presented at trial." *Schlup*, 513 U.S. at 324. "[T]he petitioner must show that it is more

likely than not that no reasonable juror would have convicted him in the light of the new

evidence." *Id.* at 327.

Petitioner has not submitted any new and credible evidence of actual innocence.

Therefore, a miscarriage of justice will not occur as a result of this Court's failure to

adjudicate the merits of Petitioner's procedurally defaulted claims.

## V. The Pending Motions

Still pending before the Court are Petitioner's motion for appointment of counsel,

which is attached to his traverse to the responsive pleading, and Petitioner's *ex parte*

motion for leave to amend his petition. The motion for appointment of counsel is

DENIED, because there is no absolute right to assistance of counsel on habeas review.

*Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Cobas v. Burgess*,  306 F.3d 441, 444

(6th Cir. 2002) (citing *McCleskey v. Zant*, 499 U.S. 467, 495 (1987)), *cert. denied,* 538

U.S. 984 (2003).  Furthermore, because Petitioner's claims lack merit or are procedurally

defaulted, the interests of justice do not require appointment of counsel.  18 U.S.C. §

3006A(a)(2)(B).

The motion for leave to amend the petition likewise is DENIED.  Petitioner seeks

to add a claim that the trial court prevented the jurors from considering his defense of self

defense and effectively informed the jurors to disregard his self-defense testimony.  To

the extent that this is a new claim, Petitioner has not exhausted state remedies for the

28

*Williams v. Booker*, Case No. 03-70761

claim.  To the extent that the claim reiterates Petitioner's claim about the adequacy of the

jury instruction on self defense, the record belies Petitioner's allegation.  *See* Tr. Aug. 30,

1999, at 136-38.

## VI.  Conclusion

The claims raised on direct review lack merit, and the claims raised on state

collateral review are procedurally defaulted.  Accordingly, the application for a writ of

habeas corpus [Doc. #3] is DENIED.  Petitioner's motion for appointment of counsel

[Doc. #28] and motion to amend the petition [Doc. #32] likewise are denied.


s/Arthur J. Tarnow
Arthur J. Tarnow
United States District Judge

Dated:  August 3, 2005

I hereby certify that a copy of the foregoing document was served upon counsel of record
on August 3, 2005, by electronic and/or ordinary mail.

s/Catherine A. Pickles
Case Manager

29